**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **FIELD AUTO CITY, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:06cv1174** |
| | ) | |
| **GENERAL MOTORS CORPORATION,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **GENERAL MOTORS ACCEPTANCE** | ) | |
| **CORPORATION,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION</u>

This commercial dispute pitting an automobile dealer against an automobile manufacturer and its finance subsidiary has grown into a multi-year, multi-forum saga. Although numerous causes of action were pursued in state court, plaintiff asserts here the same two claims against both defendants: the first under the Automobile Dealer's Day in Court Act, 15 U.S.C. § 1221 *et seq*. ("ADDCA"), and the second under 42 U.S.C. § 1983. At issue on both defendants' motions to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P., are the following questions:

(i) whether jurisdiction over the 42 U.S.C. § 1983 claim is barred by *Rooker-Feldman* doctrine,[1]

(ii) whether the ADDCA claim is barred by res judicata, and

(iii) whether plaintiff's § 1983 claim fails to state a claim for lack of state action.

---

[1] *See Rooker v. Fidelity Trust Corp.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. (1983)

**I.**[2]

 Plaintiff Field Auto City, Inc. is a Virginia corporation in the business of selling cars at a retail dealership in Alexandria, Virginia.  Plaintiff commenced this business in 1997 under the name Koons Buick Pontiac GMC, Inc., and subsequently changed its name to Field Auto City.

Defendant General Motors Acceptance Corporation ("GMAC") is a Delaware corporation, and is a wholly owned finance subsidiary of defendant General Motors Corporation ("GM"), a manufacturer of automobiles and also a Delaware corporation.

For the first few years of its operation, plaintiff financed its inventory through a line of credit with Wachovia Bank.  For various reasons, including chiefly GM dealer incentives, plaintiff found it advantageous to begin financing through GMAC.  So commencing November

---

[2] In resolving a motion to dismiss on jurisdictional grounds under Rule 12(b)(1), Fed. R. Civ. P., facts alleged in support of jurisdiction, if attacked, are not presumed to be true and further proceedings, including an evidentiary hearing, may be necessary to resolve the jurisdictional issue.  *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).  Here, however, defendant's motion does not attack the accuracy of any alleged jurisdictional facts, but claims instead that a prior state court judgment bars jurisdiction under the *Rooker-Feldman* doctrine.  In this circumstance, as noted *supra*, matters properly subject to judicial notice pursuant to Rule 201, Fed. R. Evid., are sufficient to resolve the issue and an evidentiary hearing is unnecessary.

By contrast, in resolving a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the well-pleaded facts in the complaint are presumed to be true, and the complaint is construed in the light most favorable to plaintiff.  *Venkatraman v. REI Systems, Inc.*, 417 F.3d 418, 420 (4th Cir. 2005).  Consideration is not confined to the four corners of the complaint, however, as the contents of the state-court pleadings in this matter, as well as the financing agreements and related documents signed by the parties and referred to in the complaint, both discussed *infra*, are properly subject to judicial notice and may be considered without converting the motion to one for summary judgment.  *See Phillips v. LCI Int'l., Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (document outside four corners of the complaint may be considered on motion to dismiss if "integral to and explicitly relied on in complaint" and if its authenticity is unchallenged).

Of course, conclusory allegations, unwarranted deductions of fact, unreasonable or unwarranted inferences, or bare conclusions of law, which are legion in this complaint, are not required to be accepted as true on a motion to dismiss for failure to state a claim.  *See Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (internal citations omitted); *see also Jordan v. Alternative Resources Corp,* 458 F.3d 332, 338 (4th Cir. 2006).

14, 2003, plaintiff financed its inventory through GMAC, and to that end entered into a series of

financing contracts, security agreements, and related amendments with GMAC.  The agreements

provided, *inter alia*,

> (i) that plaintiff agreed to pay to GMAC "upon demand," with interest, any amount
> GMAC advanced or agreed to advance to a vehicle manufacturer or distributor on
> plaintiff's behalf;

> (ii) that plaintiff granted GMAC a security interest in various forms of collateral,
> including plaintiff's inventory of new and used vehicles and proceeds thereof, and

> (iii) that "as each vehicle is sold, or leased," plaintiff would "remit to [GMAC] the
> amount [GMAC] advanced or [became] obligated to advance on [plaintiff's]
> behalf... ."

The remittance requirement was modified by an amendment to the security agreement, which

provided that remittance of financed amounts could be delayed upon certain conditions.  Further,

the security agreement provided that should plaintiff default on payment, GMAC's remedies

included, in addition to the standard Uniform Commercial Code remedies, the "immediate

possession of said vehicles, without demand or further notice and without legal process."

The parties to these agreements fell to fighting almost immediately.  A January 2004

audit by GMAC allegedly revealed that plaintiff had not been remitting the proceeds of sales to

GMAC, a condition GMAC alleges constituted a default under the financing agreements.

Plaintiff disputed this, claiming the audit was fraudulently conducted in retaliation for plaintiff's

manager allegedly telling customers that GMAC was lying to them about the reasons they were

being denied credit.   When the parties were unable to resolve this dispute, GMAC, on March 2,

2004, filed a petition in detinue in Alexandria Circuit Court.  *General Motors Acceptance Corp.*

*v. Field Auto City, Inc.*, No. CL04001130 (Va. Cir. March 2, 2004).  Pursuant to this petition,

3

GMAC obtained an *ex parte* seizure order and the sheriff seized plaintiff's vehicle inventory that same day.  Although Virginia law requires posting of a seizure bond in these circumstances,[3] plaintiff alleges GMAC's initial bond was nonconforming and that GMAC did not file a conforming bond until some two years later.  Plaintiff also alleges that GMAC violated the terms of the seizure order by removing vehicles from plaintiff's lot, as the seizure order authorized the sheriff to take possession of the inventory, but did not grant GMAC a right of possession.  After an adversary hearing March 9, 2004, the state court concluded that no grounds for seizure existed, and thus abated the seizure order, and ordered the vehicles returned, noting that GMAC was adequately protected by its possession of the manufacturer's certificates of origin for the vehicles.  Accordingly, the vehicles were returned to plaintiff over the course of the next nine to eleven days.  Plaintiff alleges that once the vehicles were returned, they could no longer be sold as new vehicles, thereby causing plaintiff to suffer substantial economic loss.

Plaintiff responded to the detinue petition by asserting numerous counterclaims solely against GMAC.  These counterclaims were subsequently amended three times.  The first amended set of counterclaims resulted in a state court decision that the seizure was wrongful and that plaintiff was entitled to statutory damages.  On motion for reconsideration, the state court withdrew this decision and instead granted GMAC's demurrer and dismissed this first amended set of counterclaims.[4]  The state court at that time also permitted GMAC to amend its detinue

---

[3] *See* Va. Code § 8.01-537.1.

[4] A demurrer under Virginia law is the analog and functional equivalent of a Rule 12(b)(6) motion.  For both, the alleged facts (but not conclusions of law) are assumed to be true and the grant of a demurrer, like the grant of a Rule 12(b)(6) motion, signifies that the alleged facts, assumed to be true, fail to state a claim upon which relief may be granted.  *See, e.g., NRC Management Services Corp., Inc. v. First Virginia Bank-Southwest*, 63 Va. Cir. 68, 2003 WL

petition and plaintiff to amend its counterclaims.  Subsequent versions of the plaintiff's

counterclaims to the detinue action culminated in a prolix eighty page scattershot pleading

alleging violations of Article 9, breach of contract, fraud, constructive fraud, violation of an

alleged duty of good faith, tortious interference with contract, and conversion.  At various points

in the process of amending the counterclaims, plaintiff also asserted claims for unjust

enrichment, trespass to chattels, negligent misrepresentation, violations of various Virginia

statutes, and violations of the Racketeer-Influenced and Corrupt Organizations Act, 18 U.S.C. §

1961 *et seq*.  Finally, after plaintiff's fourth attempt to assert a valid set of counterclaims, the

state court dismissed the counterclaims with prejudice.  *General Motors Acceptance Corp. v.

Field Auto City, Inc.*, No. CL04001130 (Va. Cir. April 26, 2006) (Order granting demurrer).

Thereafter, on May 19, 2006, the state court dismissed GMAC's amended detinue petition as

moot.  *General Motors Acceptance Corp. v. Field Auto City, Inc.*, No. CL04001130 (Va. Cir.

May 19, 2006) (Order dismissing petition as moot).

   Plaintiff's appeal of the dismissal of the third amended counterclaims (that is, the fourth

set of counterclaims) met with no success.  The Supreme Court of Virginia refused plaintiff's

appeal on October 24, 2006.  *Field Auto City, Inc. v. General Motors Acceptance Corp.*, No.

061703 (Va. Oct. 24, 2006) (Order refusing appeal).  A subsequent petition for rehearing in the

Supreme Court of Virginia was also denied on January 19, 2007.  *Field Auto City, Inc. v.

General Motors Acceptance Corp.*, No. 061703 (Va. Jan. 19, 2007) (Order denying rehearing).

   The instant federal action was filed on October 18, 2006, before the Supreme Court of

---

23540085 at *2 (July 28, 2003); *Coakley & Williams, Inc. v. Shatterproof Glass Corp.*, 706 F.2d
456, 457 n.2, 460 (4th Cir. 1983); *Willner v. Frey*, 421 F. Supp. 2d 913, 918 n.3 (E.D. Va. 2006).

Virginia denied plaintiff's appeal of the trial court's dismissal of plaintiff's counterclaims, and

before that court's denial of plaintiff's request for a rehearing of the denial of the appeal.  The

federal complaint adds GM as a defendant and alleges against both GM and GMAC the same

two causes of action – one under § 1983 and a second under the ADDCA.  Both defendants seek

dismissal of these claims on *Rooker-Feldman* and res judicata grounds.

Given these defenses, it is useful to set forth in tabular form plaintiff's various sets of

counterclaims.

| Pleading | Claim | Remedies sought |
|---|---|---|
| 3rd amended counterclaims | | |
| | Violation of UCC art. 9 | $2.4M damage to inventory, $15.355M lost going concern value, $13.1M lost profits |
| | Breach of contract | same, plus $120K funds GMAC withheld from plaintiff, and costs and fees |
| | Fraud | same as breach of contract |
| | Constructive fraud | same as breach of contract |
| | Violation of statutory duty of good faith | same as breach of contract |
| | Tortious interference with prospective economic opportunity | same as breach of contract |
| | Tortious interference with contract | $700K |
| | Tortious conversion | $120K, and $5M consequential damages |
| 2nd amended counterclaims | | |
| | Conversion and unjust enrichment | $120K |
| | Trespass to chattels | $13.1M lost profits |
| | Wrongful seizure | $13.1M lost profits |
| | Wrongful seizure | $13.1M lost profits |
| | Wrongful seizure | $13.1M lost profits |
| | Tortious interference with contract | $13.1M lost profits |
| | Violation of Virginia Code § 59.1-9.12 (Virginia Antitrust Act) | $30M damages |
| | Violation of Virginia Code § 46.2-1568.1 discrimination against a motor vehicle franchisee) | $30M damages |
| | Violation of Virginia Code § 46.2-1572.3 unlawful procurement of waiver of rights from motor vehicle dealer) | $13.1M lost profits |

| | Breach of contract's implied covenant of good faith | $13.1M lost profits |
|---|---|---|
| | Fraud | $13.1M lost profits, $30M damages |
| | Negligent misrepresentation | same as fraud |
| | prima facie tort | same as fraud |
| | RICO | same as fraud |
| | Respondeat superior | same as fraud |
| 1st amended counterclaims | | |
| | Untitled | $21M damages |
| | Untitled | costs and expenses from seizure, damage to inventory, lost profit |
| | Untitled | costs and expenses from seizure, damage to inventory, lost profit |
| Counterclaim | | |
| | Untitled | damages, costs, fees, punitive damages |

## II.

Defendants first claim that jurisdiction over plaintiff's § 1983 claim is barred by *Rooker-Feldman* doctrine.  This doctrine construes the federal jurisdictional statutes as precluding the exercise of jurisdiction by district courts to hear "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon-Mobil Corp. v. Saudi Basic Industries*, 544 U.S. 280, 284 (2005).  In other words, lower federal courts may not exercise jurisdiction over de facto appeals from state-court judgments.  As the Supreme Court has emphasized, however, the doctrine is a narrow one; it is not "preclusion by another name." *Lance v. Dennis*, 546 U.S. 459, ___; 126 S.Ct. 1198, 1202  (2006); *accord Davani v. Virginia Dep't of Transportation*, 434 F.3d 712, 717 (4th Cir. 2006) (renouncing Fourth Circuit's broad, pre-*Exxon Mobil* interpretation of *Rooker-Feldman* as a "jurisdictional doctrine of res judicata.").  In particular, district courts do not lack jurisdiction "simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Exxon Mobil*, 544 U.S. at

7

293.  Rather, to be barred by *Rooker-Feldman*, the injury complained of must be caused by the state court decision itself; it cannot be simply a prior injury that the state court failed to remedy. *Davani v. Virginia Dep't of Transportation*, 434 F.3d 712, 718 (4th Cir. 2006).  It follows, of course, that where a federal-court plaintiff is not challenging a state court decision, *Rooker-Feldman* does not apply.  *Davani*, 434 F.3d at 718; *see also Washington v. Wilmore*, 407 F.3d 274, 280 (4th Cir. 2005) (*Rooker-Feldman* inapplicable because claimed injury "rests not on the state court judgment itself, but rather on the alleged violation of his constitutional rights [by defendant].").  Thus, the doctrine applies where "a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court," *Lance*, 126 S.Ct. at 1202.  Put differently, district courts lack power to "reverse or modify" a state court decree, to "scrutiniz[e] or invalidat[e]" an individual state court judgment, or to "overturn an injurious state court judgment."  *Adkins v. Rumsfeld*, 464 F.3d 456, 464 (4th Cir. 2006).

Although not binding here, the Second Circuit's opinion in *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77 (2nd Cir. 2005) is especially instructive.   It usefully frames the requirements for *Rooker-Feldman* as follows:

(i) the federal court plaintiff must have lost in state court,

(ii) the plaintiff must complain of injuries caused by a state court judgment,

(iii) plaintiff must invite review and rejection of that judgment, and

(iv) the state court judgment must be rendered before the federal court proceedings began.

*Id.* at 85.  While there is no dispute as to the first of these requirements, the parties sharply dispute the last three.

The last requirement – whether the state court judgment was rendered before the federal

8

court action commenced – is disputed here because the law is unclear both as to which state court orders are sufficiently final to implicate *Rooker-Feldman* and whether *Rooker-Feldman* may operate where, as here, disposition of the state court appeal becomes final after filing of the federal suit.  Here, the pertinent sequence of events is as follows: first, the trial court judgment dismissing plaintiff's counterclaims issued on May 19, 2006, which decision plaintiff appealed to the Supreme Court of Virginia.  Next, while this appeal was pending, plaintiff filed this federal case on October 18, 2006.  Six days later, the Supreme Court of Virginia rejected plaintiff's appeal, and on January 19, 2007, that court denied plaintiff's petition for rehearing.  If the relevant judgment for *Rooker-Feldman* purposes is that of the trial court, application of *Rooker-Feldman* doctrine is not precluded here.  On the other hand, if the relevant judgment is that of the Supreme Court of Virginia, the doctrine has no application unless the doctrine has the capacity to spring into action when the state action becomes final after a federal suit is filed.  The questions presented, therefore, are which of the two decisions governs with respect to *Rooker-Feldman* and if the Supreme Court of Virginia's decision governs, does *Rooker-Feldman*, although not initially applicable at the time the federal suit is filed, nonetheless operate to bar jurisdiction once the Supreme Court of Virginia's decision becomes final.

The Fourth Circuit has not answered these questions.  While the *Exxon Mobil* decision states that *Rooker-Feldman* bars jurisdiction over state court judgments rendered "before district court proceedings commenced," the timing issues raised here were not there squarely presented; *Exxon Mobil* does not answer whether *Rooker-Feldman* operates to bar a federal action if the state decision becomes final until shortly after the federal action is filed.  Other courts have divided on the issue.  *Compare, e.g., Guttman v. Khalsa*, 446 F.3d 1027, 1031-32 (10th Cir.

2006) (*Rooker-Feldman* cannot apply when federal-court suit filed while petition for certiorari to state supreme court pending) *with Federacion de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R.*, 410 F.3d 17, 24-27 (1st Cir. 2005) (interlocutory state court orders are sufficiently final to trigger *Rooker-Feldman* if they would be reviewable in United States Supreme Court) *and Sinclair v. Bankers Trust Co. of Cal.*, No. 5:05-CV-072, 2005 WL 3434827, at *2-4 (W.D. Mich. Dec. 13, 2005) (finding that *Rooker-Feldman* applies despite filing of federal suit during pendency of state appeal).[5]  The more persuasive view, however, is that of *Sinclair*, where the district court held that "the state court proceeding that must reach judgment before a federal complaint is filed for *Rooker-Feldman* to be applicable is the appealable trial court's judgment."  *Sinclair*, 2005 WL 3434827 at *2-4.  The persuasiveness of this view stems from the fact that the purpose of *Rooker-Feldman,* namely to prevent de facto appeals from state courts to lower federal courts, is best served by applying the doctrine to state trial court judgments as well as state appellate court judgments.  Simply put, there is no sound reason to preclude the operation of *Rooker-Feldman* where a state trial court has rendered judgment, but state appeals are not yet complete when the federal action is filed.[6]  And, the soundness of this view is especially apparent in cases where, as here, the disposition of an appeal becomes final

_____

[5] *See also* Suzanna Sherry, *Logic Without Experience: The Problem of Federal Appellate Courts*, 82 Notre Dame L. Rev. 97, 144 n.267 (2006) (citing other cases disagreeing over which state court orders are sufficiently final to trigger application of the *Rooker-Feldman* doctrine).

[6] Even where *Rooker-Feldman* does not bar jurisdiction in such circumstances, it may be appropriate to stay the federal suit pending resolution of the state proceedings. *See, e.g., Amdur v. Lizars*, 372 F.2d 103, 106 (4th Cir. 1967) (noting that "a federal district court has the discretion to stay proceedings on its docket pending the outcome of a similar suit instituted in another court," because "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort . . .") (citing *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936)).

shortly after the federal action is filed.  In sum, a federal suit is no less an appeal of the state trial court judgment simply because state appeals are not yet final.  And, the purpose and function of *Rooker-Feldman* are no less implicated and important in cases where the state appeal becomes final before or after the federal suit is filed.  A contrary rule would allow a state court litigant to avoid *Rooker-Feldman* simply by filing the federal action while the state appeal is underway.  Accordingly, the fact that this action was filed six days before the Supreme Court of Virginia rejected plaintiff's appeal does not prevent application of *Rooker-Feldman* doctrine here.

In any event, this issue is not, in the end, dispositive of the *Rooker-Feldman* question.  The next and more difficult *Rooker-Feldman* requirement to resolve is whether the injury complained of here is one caused by the state court judgment.  The Supreme Court stated that mere relitigation of issues decided by the state court is not necessarily an injury "caused" by the state court judgment because such claims may be "independent" of the state court judgment.  *Exxon Mobil*, 580 U.S. at 293.  Although *Exxon Mobil* did not elaborate further on this requirement, *Hoblock* again provides useful guidance.  There, the Second Circuit illuminated this requirement by contrasting two hypotheticals.  In the first hypothetical, a state court order terminates a father's parental rights and orders the state to take custody of his son.  It is clear in this case that a father complains of an injury caused by the state court judgment when he sues in federal court claiming this order violates his substantive due process rights as a parent.  *Rooker-Feldman* therefore would bar the federal suit.  In the second hypothetical case, an employee sues his employer in state court raising claims under both state and federal anti-discrimination law.  If he loses in state court and then sues again in federal court asserting the same facts and legal theories, he is claiming injury from the defendant's conduct, not from a state court judgment.

11

*Hoblock*, 422 F.3d at 87-88.[7]  Thus, *Rooker-Feldman* would not apply.[8]

Of course, these two hypothetical examples do not exhaust the possibilities; there are instances where, as here, a plaintiff complains of a defendant's actions that appear to be produced by a state court order or judgment, to wit, the detinue seizure order.  In these circumstances, according to the Second Circuit, "a federal suit complains of injury from a state court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it."  *Id.* at 88.  Given this formulation of the requirement, it is apparent that *Rooker-Feldman* is not applicable here, as the conduct giving rise to plaintiff's § 1983 claim, namely GMAC's alleged untruthfulness in obtaining the seizure order and GMAC's alleged violation of the terms thereof, is not caused by the state court *judgment*.  The state court's judgment dismissed all plaintiff's counterclaims, including those relating to the wrongfulness of GMAC's conduct during the seizure.  Because plaintiff here claims that this same wrongful GMAC conduct caused it to suffer injury, and because this injury has merely been left unremedied by the state court, the *Rooker-Feldman* requirement that the injury complained of be caused by the state court judgment is not met.  By no means was plaintiff's alleged injury caused by the state court's judgment dismissing the counterclaims.  It follows, therefore, that plaintiff's § 1983 claims are not barred by *Rooker-Feldman*.

---

[7] *Hoblock* has been cited approvingly by the Fourth Circuit on this point.  *See Davani*, 434 F.3d at 719-20.

[8] While the employer's jurisdictional challenge would fail, a claim or issue preclusion defense might well fare better.  *See infra* Part IV.

## III.

This does not end defendant's attack on the § 1983 claims; they have another string to their bow.  Specifically, defendants argue the § 1983 claims fail for lack of state action.

A plaintiff suing under § 1983 must allege (and prove) that the defendants acted "under color of law" to deprive plaintiff of its constitutional or federal statutory rights.  This "under color of law" requirement is equivalent to the Fourteenth Amendment's "state action" requirement."  *Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 341 (4th Cir. 2000).  A deprivation of federal statutory or constitutional rights is not actionable under § 1983 unless (i) it is "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the state is responsible," and (ii) the party responsible for the deprivation is "a person who can fairly be said to be a state actor." *American Manufacturers Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal citations and quotations omitted).  A state employee is clearly a state actor, but even private parties may be state actors under some circumstances.  *See Goldstein*, 218 F.3d at 342.  In particular, a private party's joint action with a state official may sometimes be sufficient render the private party a state actor.  *See Lugar v. Edmondson Oil Co. Inc.*, 457 U.S. 922, 941 (1982).  In this regard, a state action determination requires an examination of all the relevant circumstances, to evaluate "the degree of the government's participation in the private party's activities." *Goldstein*, 218 F.3d at 342 (internal citations omitted).

Here, there is no basis on which either defendant can fairly be characterized as a state actor.  Plaintiff's allegations in this regard, distilled to their essence, are that GMAC (i) did not post a conforming bond at the time of seizure, (ii) "secretly" corrected the nonconforming bond

13

later, (iii) lied to the state court in order to obtain a seizure order, and (iv) violated the terms of

that order.  These allegations are insufficient to transform GMAC into a state actor.  Simply put,

the misuse by private litigants of a state statute or rule does not constitute state action for

purposes of § 1983.  *See Lugar,* 457 U.S. at 941.[9]  To be sure, *Lugar* recognized that a facial

challenge to a state prejudgment remedy statute implicates state action, and thus a plaintiff

presents a valid § 1983 claim insofar as he challenges the constitutionality of a statute, but not

insofar as he alleges misuse or abuse of the statute.  Indeed, *Lugar* makes clear that no state

action exists where it is merely alleged that a private party misused or abused a statute.  *See*

*Lugar*, 457 U.S. at 941-42.  In other words, there is, in this case, no facial challenge to the

Virginia detinue statute; there is, instead, an allegation that the detinue statute was misused.  As

*Lugar* teaches, therefore, this allegation does not constitute state action and plaintiff's § 1983

claim therefore fails.

Seeking to rescue its § 1983 claim, plaintiff resorts to the so called "joint action" theory,

citing at oral argument *Dennis v. Sparks*, 449 U.S. 24 (1980), in support of its argument that the

sheriff's participation in this seizure, including, allegedly, overlooking GMAC's nonconforming

seizure bond, constitutes state action.  Yet *Dennis,* read carefully, provides no support for

plaintiff.  In that case, the private defendants bribed and conspired with the defendant judge.  *Id.*

at 28.  No such allegations are made here, nor could they be; indeed, in other pleadings plaintiff

---

[9] *See also Yanaki v. Iomed, Inc.*, 319 F. Supp. 2d 1261, 1265 (D.Utah 2004) ("the inappropriate use by private litigants of a constitutional statute or rule does not constitute state action"); *Coltharp v. Cutler,* 419 F. Supp. 924, 930 (D. Utah. 1976) (noting that "before a judicial prejudgment remedy can be the basis of a section 1983 cause of action a constitutional question must exist concerning the state's prejudgment remedy procedure," and dismissing a § 1983 claim alleging defendant's use of prejudgment remedies violated state law procedures).

maintains that the actions of the Alexandria Sheriff's office were above reproach.[10]  Also, *Dennis* itself refutes plaintiff's claims of state action, as the Supreme Court there made clear that "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or joint actor with the judge." *Id.*  No "joint action" theory can be sustained on plaintiff's allegations in this case.

In sum, the § 1983 claim fails for lack of state action on the part of GMAC.  Moreover, the § 1983 claim arises entirely out of actions allegedly taken by GMAC; no basis for relief against GM is even pled.  *See* Rule 8(a)(2), Fed. R. Civ. P.  Therefore, the § 1983 claim against GM must also be dismissed.

## IV.

Defendants move to dismiss the ADDCA claims under the doctrines of claim or issue preclusion.[11]  Specifically, defendants assert that plaintiff is claim-precluded from asserting this claim, and is issue-precluded from relitigating GMAC's good faith, which is an essential element

---

[10] *See* Compl. ¶ 78 ("Field believes that GMAC misinformed and actively mislead [sic] the law enforcement officers involved in the seizure.  This pleading is in no way intended to impugn the actions of the Alexandria Sheriff's Department because of this fact.").

[11] A dismissal for claim or issue preclusion is accomplished via Rule 12(b)(6), Fed. R. Civ. P, despite the fact that it is an affirmative defense.  Such a dismissal is appropriate even if the defense does not appear on the face of the complaint because a court may properly take judicial notice of the contents of state court pleadings provided that, as here, as there is no dispute concerning the accuracy of the record.  *See supra* note 2; *see also Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000) ("Although an affirmative defense such as res judicata may be raised under Rule 12(b)(6) 'only if it clearly appears on the face of the complaint' . . . when entertaining a motion to dismiss on grounds of res judicata, a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact. . . . Because [plaintiff] does not dispute the factual accuracy of the record of his previous suit against [defendant . . . ], the district court did not err in taking judicial notice of this prior case."). (internal citations omitted).

15

of an ADDCA claim.[12]  It is therefore necessary to determine the preclusive effect of the state

court proceedings to ascertain whether plaintiff is barred from asserting the ADDCA claims by

either claim or issue preclusion.

The Full Faith and Credit statute requires a federal court to give a state court judgment

the same preclusive effect as the courts of the rendering state.  28 U.S.C.§ 1738 ("Such

[judgments] shall have the same full faith and credit in every court within the United States . . .

as they have by law or usage in the courts of such State . . . from which they are taken.").  This

requires an examination and application of the preclusion law of the state in which the judgment

was rendered.  *See Marresse v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380

(1985) (citing *Kremer v. Chemical Construction Corp*., 456 U.S. 461, 481-82 (1982)).  Since the

state court judgments in issue are those of Virginia courts, it follows that Virginia's claim and

issue preclusion law applies.

First, as to claim preclusion, Virginia law holds that "a valid, personal judgment on the

merits in favor of defendant bars relitigation of the same cause of action, or any part thereof

which could have been litigated, between the same parties and their privies."  *Bates v. Devers*,

202 S.E.2d 917, 920-21 (Va. 1974).  A cause of action "could have been litigated" when trying it

separately would constitute "claim-splitting," a term which refers to bringing successive suits on

the same "cause of action" where each suit addresses only a part of the "claim."  *Id.* at 920 n.4;

*see also Davis v. Marshall Homes, Inc.,* 576 S.E.2d 504, 506 (Va. 2003) (internal citations

---

[12] *See* 15 U.S.C. § 1222 ("an automobile dealer may bring suit against any automobile
manufacturer . . . and shall recover the damages by him sustained . . . by reason of the failure of
said automobile manufacturer . . . to act in good faith in performing or complying with any of the
terms or provisions of the franchise... .").

omitted).  In determining whether two "claims" are part of the same "cause of action," Virginia

courts look to "whether the same evidence is necessary to prove each claim." *Brown v. Haley*,

355 S.E.2d 563, 567 (Va. 1987).  *See also Davis v. Marshall Homes, Inc.*, 576 S.E.2d at 506-07

(fraud and breach of contract not "the same cause of action" for res judicata purposes under

Virginia law because different proof is required for each).

Here, there has been a valid, final judgment on the merits in GMAC's favor. *See, e.g.*

*Highsmith v. Commonwealth*, 489 S.E.2d 239, 241-42 (Va. App. 1997) ("a decision of an issue

of law on a demurrer is a decision on the merits . . . ") (internal citations omitted).  There is no

dispute that the ADDCA claim was not actually litigated in state court, but defendants assert the

claim "could have been litigated" in state court, as that phrase is interpreted by Virginia courts.

In other words, defendants argue that failing to bring the ADDCA claim in state court constituted

claim-splitting, because the ADDCA claim would require the same proof as the state-law breach

of good faith claims.  *See Bates*, 202 S.E.2d at 920-21; *Brown*, 355 S.E.2d at 567.

It appears that defendants are correct.  The ADDCA claim is claim-precluded because the

ADDCA claim "could have been brought" in state court, both in the literal sense that state courts

exercise concurrent jurisdiction over such claims,[13] and in the sense that failure to raise the claim

in the state courts constitutes claim-splitting.  Failure to assert the ADDCA claim in state court

constitutes claim-splitting because proof of the allegations that defendants violated their

obligation of good faith under ADDCA would involve precisely the "same evidence" as

plaintiff's claim, asserted in state court, that defendants breached their contractual obligation of

---

[13] *See, e.g. Hugh Chalmers Motors, Inc. v. Toyota Motor Sales USA, Inc.*, 184 F.3d 761, 764 (8th Cir. 1999) ("there is no authority for the proposition that federal district court is the exclusive forum for bringing [ADDCA] claims.").

good faith and fair dealing. *See Brown*, 355 S.E.2d at 567. Indeed, plaintiff alleges the same facts with respect to both the state breach of duty of good faith claim and the ADDCA claim. This compels the conclusion that essentially "the same evidence" is offered with respect to both the ADDCA and state law claims.[14] The state court dismissed the breach of good faith claim with prejudice, which is an adjudication on the merits. The ADDCA claim is therefore claim-precluded.

Yet even assuming that the ADDCA claim is not claim-precluded, it is nonetheless issue-precluded. Virginia issue preclusion law requires a showing that (i) the parties to both proceedings, or their privies, are the same, (ii) the factual issue sought to be precluded was actually litigated in the prior proceeding, (iii) the factual issue was essential to the judgment in the prior proceeding, (iv) the prior action resulted in a valid, final judgment, (v) that judgment was against the party against whom the doctrine is now to be applied, and (vi) the litigant now seeking to invoke issue preclusion would have been bound by a contrary resolution of the issue in the prior litigation. *Scales v. Lewis*, 541 S.E. 2d 899, 901 (Va. 2001) (internal citations omitted).

The only disputed elements here are whether GMAC's good faith for ADDCA purposes was actually litigated and essential to the state court judgment. Defendants argue that (i) a claim under the ADDCA requires proof of a particular sort of bad faith on the part of an automobile manufacturer,[15] to wit, coercion, intimidation, or threats thereof, and (ii) GMAC's good faith (or,

---

[14] Although plaintiff correctly points out that ADDCA good faith is a narrower obligation than the common law duty of good faith and fair dealing, this point is of no help to plaintiff because ADDCA is a subset of the broader good faith duty required by state law. *See infra* Part IV.

[15] Although GMAC argues that the ADDCA is inapplicable because it is not a manufacturer, the decision reached here renders it unnecessary to reach and decide this issue. To

more precisely, the sufficiency of plaintiff's allegations to state a claim for breach of good faith)

was actually adjudicated in the state court when the state court dismissed plaintiff's

counterclaims for breach of a broader common law covenant of good faith and fair dealing.

Plaintiffs respond that the duty of good faith under ADDCA is "wholly dissimilar" from the

common law duty of good faith and fair dealing, and thus GMAC's good faith was not litigated

in state court nor essential to the state court judgment.

    "Good faith" under the ADDCA refers the duty of automobile manufacturers, dealers, and

their respective employees "to act in a fair and equitable manner toward each other so as to

guarantee the one party freedom from coercion, intimidation, or threats of coercion or

intimidation from the other party."  15 U.S.C. § 1221(e).  This standard does not mean "good

faith in a hazy or general way, nor does it mean unfairness."  *Autohaus Brugger, Inc. v. Saab

Motors, Inc.*, 567 F.2d 901, 911 (9th Cir. 1978).  Rather, a breach of ADDCA good faith requires

---

be sure, GMAC is not an automobile manufacturer; it is the wholly owned finance subsidiary of
an automobile manufacturer.  In this regard, a finance subsidiary can be held liable under the
ADDCA if it acts as an agent of its parent-manufacturer.  *See, e.g., DeValk Lincoln Mercury v.
Ford Motor Co.*, 550 F. Supp. 1199, 1202 (N.D. Ill. 1982).  One court has gone so far as to state
that a manufacturer's finance subsidiary falls within ADDCA's scope as a matter of law,
regardless of whether it is a party to the franchise agreement and regardless of the factual
circumstances evincing (or not evincing) a principal-agent relationship between the manufacturer
and finance subsidiary.  *Colonial Ford v. Ford Motor Co.*, 592 F.2d 1126, 1129 (10th Cir. 1979).
Other courts have rejected *Colonial Ford* as wrongly decided.  *See, e.g., Stamps v. Ford Motor
Co.*, 650 F. Supp. 2d 390, 396 (N.D. Ga. 1986); *Nissan Motor Acceptance Corp. v. Stovall
Nissan, Inc.*, 480 S.E.2d 322, 324 n.3 (Ga. App. 1997).  *See also Metco Products v. NLRB*, 884
F.2d 156, 159 (4th Cir. 1989) ("the existence and scope of agency relationships are factual
matters.").  In any event, an argument that GMAC was GM's agent is a two-edged sword.  While
an agency relationship would be necessary to state an ADDCA claim against GMAC, alleging
such a relationship would also allege privity between GM and GMAC, which imparts to GM the
preclusive benefit of the state court judgment in favor of GMAC.  *See Richards v. 6830 Elm St.
Ltd. Corp.*, 1998 WL 972333 at *5 (Va. Cir. Aug. 28, 1998) (principal and agent are privies for
res judicata purposes) (citing *City of Richmond v. Davis*, 135 Va. 319 (1923)).

actual or threatened coercion or intimidation.  *Eastern Auto Distributors, Inc. v. Peugeot Motors of America, Inc.*, 795 F.2d 329, 336 (4th Cir. 1986).  As construed by the courts, actionable coercion or intimidation must include a wrongful demand coupled with threatened coercion or intimidation for noncompliance with that demand.  *See, e.g., Bronx Chrysler Plymouth v. Chrysler Corp.*, 212 F. Supp. 2d 233, 245 (S.D.N.Y. 2002); *Colonial Dodge, Inc. v. Chrysler Corp.*, 11 F. Supp. 2d 737, 743 (D. Md. 1996) (both citing cases).

It is apparent that the state court did indeed adjudicate GMAC's good faith, or more precisely, it determined that plaintiff's allegations in state court, which are essentially identical in all material respects to those made here, were insufficient to allege a breach of the broader common law obligation of good faith and fair dealing.  It therefore follows *a fortiori* that such allegations necessarily fail to state a breach of good faith under ADDCA.  While plaintiff is correct that ADDCA good faith is a narrower and more specialized obligation than that imposed by common law, plaintiff fails to appreciate that a violation of ADDCA good faith is in essence a lesser included offense.  Put differently, a violation of the ADDCA good faith requirement would necessarily constitute a violation of Virginia's common law obligation of good faith.  *See In Re Northview Motors, Inc.*, 202 B.R. 389, 399 (Bankr. W.D. Pa. 1996) (holding, for purposes of characterizing an ADDCA action as one in contract rather than tort, that "ADDCA's targeted definition of good faith is most certainly covered under the more broadly defined commercial concept embodied in the common law . . . ").  *See also* Va. Code § 8.3A-103(4) (UCC Article 3 definition of good faith as "honesty in fact and the observance of reasonable commercial standards of fair dealing"); *South Auburn LP  v. Old Auburn Mills LP*, 68 Va. Cir. 145, 2005 WL 1421129 at *7 (Va. Cir. June 13, 2005) (same standard in simple contract case).  Any threatened

coercion or intimidation actionable under ADDCA would certainly be commercially unreasonable, and thus run afoul of the implied covenant of good faith and fair dealing present in the parties' contracts.  Therefore, an adjudication that contractual good faith was not breached, or that allegations of such a breach are insufficient, logically entails that ADDCA good faith also was not breached, or that the identical allegations fail to state a claim to that effect.

And it appears that the state court made a determination that GMAC acted in accordance with the contractual obligation of good faith and fair dealing.  Several of plaintiff's state court counterclaims required a determination of good faith, or resolved the sufficiency of allegations alleging a breach thereof; for example, the state court breach of contract counterclaim alleged breaches of GMAC's contractual duty of good faith.[16]  The state court dismissed those claims with prejudice.  Therefore, the adequacy of these allegations has already been adjudicated in favor of GMAC.

In sum, plaintiff is claim-precluded from asserting an ADDCA claim at all, and even were this not so, plaintiff would be issue-precluded from relitigating the adequacy of its allegations regarding GMAC's good faith.  Of course, since GM is alleged to be GMAC's principal, the two defendants are privies, and the state court judgment in favor of GMAC is also a defense to the ADDCA claim asserted against GM.  Therefore, plaintiff cannot state a claim for a violation of ADDCA, and the ADDCA claim is properly dismissed pursuant to Rule 12(b)(6), Fed. R. Civ. P.

---

[16] Plaintiff also asserted a claim for breach of an independent, non-contractual duty of good faith – a duty which, the state court held, Virginia law does not recognize.  *See General Motors Acceptance Corp. v. Field Auto City, Inc.*, No. CL04001130 (Va. Cir. Apr. 26, 2006).

21

## V.

In summary, no ideal is more central to our system of justice than that every claimant should have his/her day in court.  Many rules of law operate to ensure this ideal.  At the same time, other rules of law, including *Rooker-Feldman*, claim preclusion, and issue preclusion, also sensibly operate to prevent claimants from having multiple days in court, as this wastes scarce public judicial resources, is unfair to opposing parties, and raises the specter of inconsistent judgments.  Here plaintiff had its day in court.  In this respect, it litigated for twenty two months in state court where it had four opportunities to assert claims against defendants, all of which failed as a matter of law.  Now, relying on precisely the same facts alleged in state court, plaintiff wants to have a second day in court.  This cannot be allowed: claim and issue preclusion appropriately bar this attempt.

Only two days after oral argument on the motions at bar, plaintiff requested leave to amend the complaint pursuant to Rule 15, Fed. R. Civ. P., to add a state law claim for abuse of process.  An Order has issued denying the motion to amend insofar as the amended complaint alleges the same claims included in the original complaint.  As that Order reflects, the originally-pled claims have been dismissed for the reasons stated herein.  The motion to amend was deferred with respect to the newly-pled abuse of process claim.  If this new claim fails, the deferred portion of the motion will be denied as futile.[17]  If abuse of process is a viable claim in the circumstances, the amendment may be allowed.

An appropriate Order has issued.

---

[17] *See, e.g., Pittston Co. v. United States*, 199 F.3d 694, 705 (4th Cir. 1999) (quoting *Foman v. Davis*, 371 U.S. 178 (1962)) (futility of proposed amendment warrants denial of leave to amend).

_____/s_____

Alexandria, Virginia                    T. S. Ellis, III
February 26, 2007                       United States District Judge